UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK S. TURNBOW, | ) | Case No. 5:08CV0725 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | JUDGE PETER ECONOMUS |
| | ) | (Magistrate Judge McHargh) |
| MARGARET BAGLEY, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| | ) | |

McHARGH, Mag.J.

The petitioner Mark S. Turnbow ("Turnbow") filed a petition for a writ of habeas corpus arising out of his 2004 convictions for two counts of felonious assault, one court of failure to comply with the signal of a police officer, and one count of negligent assault, after a bench trial in the Stark County (Ohio) Court of Common Pleas. (Doc. 1.) In his petition, Turnbow raises two grounds for relief:

> 1. Petitioner Turnbow was denied effective assistance of trial counsel, as guaranteed by the Sixth Amendment to the United States Constitution, by (1) counsel's failure to conduct an adequate investigation, (2) counsel's failure to raise an affirmative defense.
>
> 2. Petitioner Turnbow was denied effective assistance of appellate counsel, as guaranteed by the Sixth and Fourteenth Amendment[s] to the United States Constitution, by appellate counsel's failure (1) to cite

trial counsel's errors in failing to investigate and prepare a defense; [2] appellate counsel's failure to permit petitioner to assist with and review appellate brief.

(Doc. 1, at 7, 16.) The respondent has filed a Return of Writ (doc. 6), and Turnbow has filed a Traverse (doc. 10).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

On September 7, 2004, the Stark County Grand Jury indicted appellant on three counts of felonious assault, in violation of R.C. 2903.11(A), and one count of failure to comply with the signal of a police officer, in violation of R.C. 2921.331(B). Appellant entered a plea of not guilty to the charges at his arraignment on September 10, 2004. At a pretrial on October 20, 2004, appellant's trial counsel advised the trial court appellant intended to waive his right to a jury trial. Appellant filed a written waiver of jury trial on November 18, 2004. Before accepting the waiver, the trial court advised appellant of the meaning of the right to a jury trial, and inquired of him to determine if he fully understood and was voluntarily waiving the right.

After finding appellant voluntarily, knowingly, and intelligently waived his right to a jury, the matter proceeded to trial. Officer Shawn Peoples of the Canton Police Department testified he was working the 7pm to 7am shift on August 5, 2004, when he observed a silver Ford truck traveling in the wrong direction on Second Street, SE, in Canton, Ohio. Officer Peoples activated the lights on his cruiser and attempted to catch the vehicle. After catching up with the vehicle, the officer used the air horn on the cruiser to get the driver's attention. The driver, who was subsequently identified as appellant, turned north on Cherry Avenue, SE, and then eastbound on East Tuscarawas. Officer Peoples followed behind the vehicle with his lights activated and intermittently hitting the air horn. The officer was able to see the appellant in the left side mirror, and noticed "he looked at me and, you know, he-and he had a smile on his face. I found that kind of strange." Tr. at 25. Officer Peoples called for backup, and continued to follow the truck southbound on Young Avenue, SE. The officer again noticed appellant in the left side mirror, smiling at him. Appellant

maintained a rate of speed between 25 and 30 mph, and stopped at every intersection.

Officer Michael Lombardi and Michael Walker arrived in car 17. The two cruisers tried to "box the truck in" with Officer Peoples' cruiser in front and car 17 behind. Appellant made an evasive move down an unnamed alley, situated between houses. Officers Lombardi and Walker pursued the vehicle, which was then traveling at a high rate of speed. Officer Peoples had passed the alley and traveled to the corner of Sterling and Third Streets, SE. The silver truck cut across a parking lot, and almost hit Officer Peoples' cruiser. In order to avoid a major accident, Officer Peoples went off the road and onto Third Street, SE, traveling in the wrong direction.

Officers Lombardi and Walker continued to pursue the truck. Eventually, the silver truck and both cruisers ended up in the parking lot of a brickyard. Officer Lombardi alighted from the cruiser. Appellant reversed the truck and hit car 17. Officer Lombardi went down. Appellant drove erratically on the loose gravel pavement, kicking up rocks and dust, and came close to hitting Officer Walker, who fired a shot from his weapon.

Officer Peoples had exited his cruiser and observed the truck coming at him, fan tailing through the parking lot. As the vehicle approached and passed, Officer Peoples fired two rounds at the truck. Appellant exited the brickyard, traveling in the wrong direction on Third Street, SE. The officers stopped their pursuit as Officer Peoples had previously obtained the license plate number. Per department protocol, because shots had been fired, the officers proceeded to Aultman Hospital for drug and alcohol testing. Officer Lombardi was also treated for swelling, contusions and abrasions to his left knee.

The officers traced the truck to appellant's home. At approximately 2:00am, officers from the Wayne County Sheriff's Department arrived to search the house. Appellant returned home at approximately 6:00am and the Wayne County officers took appellant into custody for questioning.

At the close of the State's evidence, appellant made an oral Crim.R. 29 Motion for Acquittal, which the trial court overruled. Thereafter, appellant testified on his own behalf. Appellant stated he was home on August 5, 2004, working on a porch construction project. He recalled he began drinking that morning with a couple of Jack Daniels

3

and Coca Cola's. The last thing appellant remembered was being in
his upstairs office between 3:00 and 4:30pm. Appellant testified he did
not remember anything that occurred from 4:30pm until 6:30am the
following morning, when he was traveling down his street towards his
home. Appellant acknowledged his problem with alcohol had
progressively worsened over the past six months to year.

When appellant returned home, he was met by five Wayne County
Sheriff's cruisers. The officers informed him the Stark County
Detective Bureau wanted to ask him some questions. Appellant denied
any knowledge of the events of the evening, and tried to explain this to
the officers. On cross-examination, appellant acknowledged the silver
truck the police had pursued and videotaped was his vehicle, but
denied being the driver of the vehicle that evening.

After hearing all the evidence, the trial court found appellant not
guilty of one count of felonious assault with respect to Officer
Lombardi, but found him guilty of the lesser included offense of
negligent assault. The trial court found appellant guilty of the
remaining two counts of felonious assault as well as the one count of
failure to comply. The trial court ordered a pre-sentence investigation
and scheduled a sentencing hearing for December 22, 2004. The trial
court imposed a sentence of five years on each of the felonious assault
convictions and ordered the terms to run concurrently. The trial court
imposed a term of one year on the failure to comply count, and ordered
the term run consecutively to the sentences on the felonious assaults.

(Doc. 6, RX 6, at 2-5; State v. Turnbow, No. 2005CA00026, 2005 WL 3475742, at *1-

*2 (Ohio Ct. App. Dec. 19, 2005).)

### A.  Direct Appeal

Turnbow, through counsel, filed a timely direct appeal from his conviction.

He raised the following three assignments of error:

> 1. Trial court's finding of guilt was against the manifest weight and
> sufficiency of the evidence when the appellant could not form the
> intent of "knowingly" because he was intoxicated and had "blacked
> out" at the time of the incident.

4

> 2. Appellant was denied his rights to due process and of assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution, because his trial counsel provided ineffective assistance.
>
> 3. The trial court erred prejudicially when it failed to conduct a proper colloq[u]y at appellant's waiver of his right to a jury trial.

(Doc. 6, RX 4.) The court of appeals affirmed his convictions on Dec. 19, 2005. (Doc. 6, RX 6; State v. Turnbow, No. 2005CA00026, 2005 WL 3475742 (Ohio Ct. App. Dec. 19, 2005).)

On March 3, 2006, Turnbow filed pro se an untimely notice of appeal and motion for leave to file a delayed appeal to the Supreme Court of Ohio. (Doc. 6, RX 7-8.) The Court denied the motion for delayed appeal, and dismissed the appeal. (Doc. 6, RX 9; State v. Turnbow, 109 Ohio St.3d 1421, 846 N.E.2d 532 (2006).)

### B. Application to Re-open Appeal

While his appeal to the state high court was pending, Turnbow moved on Mar. 13, 2006, to re-open his appeal, under Ohio App.R. 26(B), on the grounds that appellate counsel was ineffective. (Doc. 6, RX 10.) The court of appeals denied his motion to re-open. (Doc. 6, RX 11.)

Turnbow appealed the denial to the Ohio Supreme Court, and raised three propositions of law:

> 1. Trial court's finding of guilt was against the manifest weight and sufficiency of the evidence when the appellant could not form the intent of "knowingly" because he was "blacked out" at the time of the incident.

5

> 2. Appellant was denied his right to due process and of effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution, because both trial and appellate counsels provided ineffective assistance.
>
> 3. Trial court erred prejudicially when it failed to conduct a proper colloquy at appellant's waiver of his right to a jury trial.

(Doc. 6, RX 13.) On Jan. 27, 2007, the court dismissed the appeal as not involving any substantial constitutional question. (Doc. 6, RX 15; State v. Turnbow, 112 Ohio St.3d 1446, 860 N.E.2d 769 (2007).)

### C. Petition to Vacate or Set Aside Sentence

While his direct appeal was pending, Turnbow filed a pro se petition under Ohio Rev. Code § 2953.21, to vacate or set aside his sentence. The petition was based on seven claims alleging ineffective assistance of counsel. (Doc. 6, RX 16.) The state filed a motion to dismiss (doc. 6, RX 17), which was granted by the court (doc. 6, RX 19.)

Almost seven months later, Turnbow filed a motion for leave to appeal the denial of his petition for post-conviction relief. (Doc. 6, RX 20.) Turnbow presented four grounds for relief in his brief in support, all based on ineffective assistance of counsel. (Doc. 6, RX 21.) The court of appeals affirmed his convictions and the judgment of the trial court. (Doc. 6, RX 23; State v. Turnbow, No. 2006CA00159, 2007 WL 1651954 (Ohio Ct. App. May 31, 2007).)

Turnbow again appealed to the Ohio Supreme Court (doc. 6, RX 24), but the court denied leave to appeal on Oct. 31, 2007, and dismissed the appeal as not involving any substantial constitutional question. (Doc. 6, RX 25; State v. Turnbow, 115 Ohio St.3d 1472, 875 N.E.2d 627 (2007).)

### D. Motion for Relief from Judgment

After filing his petition for a writ of habeas corpus (doc. 1) in this court on March 24, 2008, Turnbow filed a motion for relief from judgment in the trial court on Feb. 10, 2009, arguing that his sentence was void because he was not notified at the sentencing hearing of post release control. The court overruled the petition, and Turnbow appealed. The trial court held a re-sentencing on July 8, while the appeal was pending, thus his appeal was denied as moot, and dismissed. See generally State v. Turnbow, No. 2009CA00077, 2009 WL 3184232 (Ohio Ct. App. Sept. 28, 2009).

## II. HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

Turnbow has filed his petition pro se.  The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed.  Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S.

8

519 (1972) (per curiam)). Other than that, no special treatment is afforded litigants who decide to proceed pro se. McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

Several of the grounds put forward by Turnbow allege violations of the Ohio Constitution. The question before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Federal habeas relief is not available for a claimed violation of state law, thus any alleged violation of the Ohio Constitution is not properly before this court. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Both claims of the petition are based on the allegedly ineffective assistance of counsel. Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel." Joshua v. DeWitt, 341 F.3d 430, 437 (6th Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).

The Sixth Circuit discussed the general standard for ineffective assistance of counsel in Monzo v. Edwards:

> To establish ineffective assistance of counsel under Strickland, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant. Review of counsel's performance is highly deferential and requires that courts "indulge a

9

>   strong presumption that counsel's conduct falls within a wide range of
>   reasonable professional assistance."  To establish prejudice, the
>   defendant "must show that there is a reasonable probability that, but
>   for counsel's unprofessional errors, the result of the proceeding would
>   have been different.  A reasonable probability is a probability sufficient
>   to undermine confidence in the outcome."

Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002) (internal citations omitted).

See generally Strickland, 466 U.S. at 689 (two-part test).  A criminal appellant is constitutionally entitled to the effective assistance of counsel in his direct appeal, as well as at trial.  Evitts v. Lucey, 469 U.S. 387 (1985).

In the habeas context, this court considers petitioner's claim "within the more limited assessment of whether the state court's application of Strickland to the facts of this case was objectively unreasonable."  Washington v. Hofbauer, 228 F.3d 689, 702 (6th Cir. 2000).

### A.  Ineffective assistance of trial counsel

The first ground of the petition is that trial counsel was ineffective for two reasons:  "(1) counsel's failure to conduct an adequate investigation, [and] (2) counsel's failure to raise an affirmative defense."  (Doc. 1, at 7.)  Later, in his brief, Turnbow also raises the issue that counsel was ineffective in failing to object o inadmissible evidence.  Id. at 15.

10

Turnbow alleged ineffective assistance of counsel in his direct appeal.[1] (Doc. 6, RX 4.) He argued that "his trial counsel was ineffective by advising the appellant to waive his constitutional right to a trial, by failing to present expert testimony as to his state of mind, level of intoxication, his ability to perform and his capacity to act knowingly, and by preventing appellant from addressing the court when he attempted to do so." (Doc. 6, RX 4, at 12; see generally RX 4, at 12-19.) Relevant to this habeas petition, Turnbow presented the failure to present expert testimony as follows:

> In the instant case, the Appellant states that counsel's representation fell below acceptable standards and deprived him of a fair trial because counsel failed to meet the requirements of a defense of intoxication as it relates to negating a specific intent. Appellant avers that his counsel prejudiced the defense by failing to present expert testimony at trial as to the effects of alcohol. The appellant further states that his Counsel failed to present expert testimony as to his condition because

---

[1] The respondent notes that Turnbow raised some of these claims in his petition for post-conviction relief. (Doc. 6, at 17-18; see also doc. 6, RX 16.) However, a petition for post-conviction relief, pursuant to Ohio Rev. Code § 2953.21, is a civil proceeding. Normand v. McAninch, 210 F.3d 372, 2000 WL 377348, at *5 (6th Cir. 2000) (TABLE, text in WESTLAW) (citing State v. Nichols, 11 Ohio St.3d 40, 463 N.E.2d 375 (1984)); State v. Apanovitch, 107 Ohio App.3d 82, 87, 667 N.E.2d 1041, 1044 (Ohio Ct. App. 1995) (post-conviction proceeding is collateral civil attack on judgment). Even if a habeas petitioner can demonstrate that some error occurred during state post-conviction proceedings, the claim is not cognizable on federal habeas review. Cress v. Palmer, 484 F.3d 844, 853 (6th Cir. 2007); Roe v. Baker, 316 F.3d 557, 571 (6th Cir. 2002), cert. denied, 540 U.S. 853 (2003) (citing Kirby v. Dutton, 794 F.2d 245, 247 (6th Cir. 1986)); Greer v. Mitchell,  264 F.3d 663, 681 (6th Cir. 2001), cert. denied, 535 U.S. 940 (2002); Montgomery v. Meloy, 90 F.3d 1200, 1206 (7th Cir.), cert. denied, 519 U.S. 907 (1996) (citing cases). Habeas relief cannot be granted for an alleged wrong in a post-conviction proceeding because the claim relates to a state civil matter. Roe, 316 F.3d at 570-571 (citing Kirby, 794 F.2d at 247).

> he was never evaluated by a mental health provider. Appellant states that counsel is responsible for this lack of an evaluation.

(Doc. 6, RX 4, at 13.)

The respondent counters that trial counsel called both Turnbow and his wife to testify "about his intoxication and the [e]ffects it seemed to have on him." (Doc. 6, at 22.) Also, the trial court in this bench trial found that Turnbow was not so intoxicated that he could not form the intent to purposely attempt to injure the police officers. Id. The court of appeals found "ample evidence from which the trial court could find [Turnbow] had the requisite intent. (Doc. 6, RX 6, at 8; Turnbow, 2005 WL 3475742, at *4.)

The court of appeals found that Turnbow had failed to establish that the second prong of the Strickland test, in that there was no showing that the testimony of an expert would have changed the result of his bench trial. (Doc. 6, RX 6, at 10-11; Turnbow, 2005 WL 3475742, at *5-*6.)

In his traverse, Turnbow responds that trial counsel was ineffective in failing to properly argue a "blackout defense." (Doc. 10, at 7-11.) On appeal, he had presented this argument as the failure to provide expert testimony in support of this affirmative defense. (Doc. 6, RX 4, at 13-16.) Turnbow argued that his counsel "failed to present any medical or expert testimony to prove that [he] was impaired. A medical expert was necessary to demonstrate that [he] could not possibly form a specific intent to cause harm to the three police officers at issue." Id. at 14.

12

Turnbow contends that his counsel did not put forth expert testimony which would have supported the "blackout defense." (Doc. 10, at 8.)

Under Ohio law, "voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense." State v. McClaskey, No. 05AP-882, 2006 WL 3704036, at *3 (Ohio Ct. App. Dec. 14, 2006) (quoting Ohio Rev. Code § 2901.21(C).) Ohio's Jury Instructions provide that, where a person "commits an act while unconscious as in a (blackout)," such an act is not a criminal offense even though it would be a crime if such act were the product of a person's volition. State v. Singleton, No. 2002-L-077, 2004 WL 605138, at *5 (Ohio Ct. App. Mar. 29, 2004) (citing Ohio Jury Instr. § 409.05). The Comment to the Jury Instruction also notes: "This instruction would not apply to one who recklessly or negligently became intoxicated or drove a car while sleepy." State v. Cutlip, No. 99-L-149, 2001 WL 687493, at *6 (Ohio Ct. App. June 15, 2001) (quoting Comment to O.J.I. § 409.05).

"Blackout" is an affirmative defense that must be proved by a preponderance of the evidence. Singleton, 2004 WL 605138, at *5 (citing State v. LaFreniere, 85 Ohio App.3d 840, 848, 621 N.E.2d 812 (Ohio Ct. App. 1993)); see also doc. 10, at 8. "In the majority of cases in which the blackout defense has been invoked, the defendant has attempted to establish that he was unconscious at the time the act was committed." Cutlip, 2001 WL 687493, at *6 (quoting LaFreniere, 85 Ohio App.3d at 848, 621 N.E.2d 812).

13

In McClaskey, for example, the court found that the mere fact that a person was intoxicated would not be sufficient to provide a defense.  The court said the person's condition "would have to rise to the level of unconsciousness before the blackout defense would be available." McClaskey, 2006 WL 3704036, at *3.  In Singleton, the court stated:

> Evidence that a person was prone to abuse alcohol to the point of blackout is insufficient to warrant a jury instruction on this affirmative defense. There must be some evidence that the defendant was suffering from blackout at the time he committed the offense to warrant an instruction.

Singleton, 2004 WL 605138, at *5.  Where there was no evidence that the defendant was unconscious at the time of the offense, courts have found that the blackout defense was not properly invoked.  McClaskey, 2006 WL 3704036, at *3; Singleton, 2004 WL 605138, at *5; Cutlip, 2001 WL 687493, at *6-*7 (citing cases).

Here, Turnbow maintains that "he had no recollection of the events," and that he became aware of his actions only after viewing a police dashboard videotape of the incident.  (Doc. 10, at 2.)  He claims that the blackout defense would have proven that his "episodic blackouts [a]ffected his cognitive memory."  (Doc. 1, at 10.)

Courts have held that "failure to recollect is distinguishable from an unconscious state."  Cutlip, 2001 WL 687493, at *7.  The blackout defense requires "more than just a loss of remembering what happened."  Id. at *6.  One of the cases cited by Turnbow, doc. 10, at 10, expands on this point:

> The defense of blackout is not available in every instance where the defendant cannot remember what occurred.  Rather, the defense of blackout is available only in those instances where the blackout

14

> prevented the defendant from acting in a normal fashion. This would
> include such a situation as operation of a motor vehicle, where
> blackout would be a defense for losing control of the vehicle and
> causing injury or death to another. Here, however, the offense is not
> one that could be committed as a result of a blackout. No reflexes,
> convulsions, or other involuntary bodily movements by defendant could
> be involved in the conduct described by the witnesses consisting of
> stabbing the victim in the back and then in the throat.

State v. Griffin, No. 86AP-759, 1988 WL 4651, at *2 (Ohio Ct. App. Jan. 19, 1988). Turnbow points to no evidence that he had lost consciousness at the time of the events in question. Turnbow has not established that there was a reasonable probability that the result of the trial would have been different had his counsel presented the blackout defense in greater detail.

Also to the evidentiary argument, the court of appeals ruled that counsel was not ineffective for failing to raise an objection which would have been denied. The court ruled that the videotape in question was properly admitted, thus counsel was not ineffective for failing to object to its admission. (Doc. 6, RX 6, at 11; Turnbow, 2005 WL 3475742, at *6.) The presumption is that the Ohio state courts correctly interpret Ohio evidence law in their evidentiary rulings. Small v. Brigano, No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005).

This court cannot find that the state court's application of Strickland, finding that Turnbow had failed to establish the second prong, was objectively unreasonable. Washington, 228 F.3d at 702. Thus, Turnbow has failed to demonstrate that the state court decisions involved an unreasonable application of

15

clearly established federal law. The petition should not be granted on the first ground, ineffective assistance of trial counsel.

### B. Ineffective assistance of appellate counsel

The second ground of Turnbow's petition is that appellate counsel was ineffective for two reasons: appellate counsel's failure "to cite trial counsel's errors in failing to investigate and prepare a defense," and the "failure to permit petitioner to assist with and review appellate brief." (Doc. 1, at 16.)

Appellate counsel is not ineffective for failing to raise every colorable claim. Wilson v. Hurley, No. 03-3481, 2004 WL 1941300 (6th Cir. Aug. 30, 2004), cert. denied, 543 U.S. 1160 (2005); Coleman v. Mitchell, 268 F.3d 417, 430 (6th Cir.), cert. denied, 535 U.S. 1031 (2001) (citing Jones v. Barnes, 463 U.S. 745 (1983)). Only when the issues not presented are clearly stronger than those presented will the presumption of effective assistance of counsel be overcome. Caver v. Straub, 349 F.3d 340, 348 (6th Cir. 2003); Coleman, 268 F.3d at 430 (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

Under Ohio law, claims of ineffective assistance of appellate counsel must be raised in a motion to re-open the appeal before the Ohio Court of Appeals. Monzo, 281 F.3d at 577 (citing State v. Murnahan, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992)); Ohio App. R. 26(B). Turnbow's Rule 26(B) application did not contain the required assignments of errors. (Doc. 6, RX 11, at 1; see generally doc. 6, RX 10.)

The court deemed the following to be his assignments of error, regarding ineffective assistance of appellate counsel:

> 1. [Failure to raise trial counsel's] Not presenting witnesses requested by the appellant at the time of trial.
>
> 2. [Failure to raise trial counsel's not] Presenting a[n] issue of a violation of [Ohio Rev. Code] § 2903.11.

(Doc. 6, RX 11, at 1.)

Turnbow claimed that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on two issues. (Doc. 6, RX 10, at 8-9.) Turnbow alleged ineffective assistance of trial counsel in two regards: first, counsel's failure to call non-expert witnesses suggested by Turnbow who would testify to issues concerning his alcoholism. (Doc. 6, RX 10, at 4-7; see also RX 11, at 1-2.) The second claim, not at issue in this habeas petition, was trial counsel's failure to challenge on the basis of Ohio Rev. Code § 2903.11(A)(2) (single act of assault against multiple officers is one offense). (Doc. 6, RX 10, at 9; see also RX 11, at 3.)

The state court did not consider Turnbow's mention, in passing, of counsel's refusal to permit Turnbow to assist on the appellate brief, to constitute an assignment of error, and thus did not explicitly rule on that issue. Turnbow had raised the issue briefly in his discussion of trial counsel's failure to present all the witnesses suggested by him. (Doc. 6, RX 10, at 8.)

Although a criminal defendant may choose to act as his own attorney, there is no constitutional right to compel appellate counsel to permit appellant to assist

17

counsel in preparing his appellate brief, if counsel, as a matter of professional judgment, decides not to do so.  See Jones, 463 U.S. at 751.

The state court of appeals rejected Turnbow's other assignments of error. The court set forth the Strickland standard as the basis for its analysis of the claims of ineffectiveness.  (Doc. 6, RX 11, at 2.)  The court noted that "[a]ppellate counsel need not raise every non-frivolous issue; counsel may limit the arguments raised in order to focus on issues most likely to be successful."  Id.  The court found that Turnbow's assertions that trial counsel failed to adequately interview and prepare defense witnesses was "premised upon information dehors the record and cannot be considered by this Court."  Id. at 3.  Thus, the court ruled that any alleged ineffectiveness by trial counsel was not demonstrated in the record before the court, and the court found that Turnbow had not established that appellate counsel was ineffective.  Id.

The respondent argues that the court's decision was reasonable.  (Doc. 6, at 23.)  The respondent points out as well that the state court of appeals on direct appeal had rejected Turnbow's underlying allegations of ineffectiveness of trial counsel.  Id.

As discussed above, Turnbow has not established that there was a reasonable probability that the result of the trial would have been different had his trial counsel presented the blackout defense with additional witnesses.  This court does not consider the state court's application of Strickland to be objectively unreasonable.  Washington, 228 F.3d at 702.  Turnbow has failed to demonstrate

that the state court decisions involved an unreasonable application of clearly established federal law.  The petition should not be granted on the second ground, ineffective assistance of appellate counsel.

## IV.  SUMMARY

The petition for a writ of habeas corpus should be denied.  Turnbow has failed to demonstrate that the state court decisions involved an unreasonable application of clearly established federal law.

## RECOMMENDATION

It is recommended that the petition be denied.

Dated:  Oct. 27, 2009                         /s/ Kenneth S. McHargh
                                                           Kenneth S. McHargh
                                                           United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).